ROBERT M. NEUBRAND, Appellant, v. W. H. KRAFT et al.,
Appellees.

**AUTOMOBILES:** Bailment—Liability of Bailor—Negligence of
Bailee. The bailor of an automobile for hire, who furnishes no
driver, is not, ordinarily, responsible to third persons for the
negligence of the bailee.

PRINCIPLE APPLIED: One who was engaged in the business
of letting automobiles for hire let a car without a driver to
one who was accustomed to the use of automobiles but not of
the make in question. The owner, in the presence of the bailee,
backed the car out of the garage and gave him some instruc-
tions as to its use. The bailee was also given other instructions
as to the operation of the car at a garage other than that of
the owner. The car was in perfect condition. The bailee negli-
gently injured a third person. *Held*, the bailor was not liable.
The court says: "In the absence of evident unfitness of a cus-
tomer applying for a vehicle, we see no reason why the owner
should be held to make an investigation into his qualifications as
a driver."

*Appeal from Monona District Court.*—HON. J. F. OLIVER,
Judge.

TUESDAY, MARCH 16, 1915.

THE opinion states the case.—*Affirmed.*

*J. A. Pritchard*, for appellant.

*M. W. Newby*, for appellees.

WEAVER, J.—The petition alleges that the defendants
Leitzen are owners of a garage in the town of Mapleton, where
they keep automobiles for sale and hire and hold themselves
out to the public as being engaged in that business; that in
pursuit of such business and occupation they let for hire to
the defendant Kraft a Ford automobile, knowing at the time

that Kraft would himself run and operate the car and was intending to drive it to the town of Ute, where there was to be a large gathering of people attending a carnival of sports. It further alleges that the Leitzens well knew that an automobile driven by an unskilled driver or by one not familiar with a car of that pattern was a dangerous machine to be driven among crowds; that said defendants were informed that Kraft had no knowledge of the mechanism of a Ford car and in fact had never driven one, yet, knowing these facts and the danger attending his use of said car, they carelessly and negligently let the car to said Kraft for the purposes above mentioned. It is further alleged that plaintiff was a spectator with others at the carnival in Ute and, in the exercise of reasonable care on his part, he was struck and severely injured by said Ford car being then and there operated by said Kraft without due skill and care as he was being permitted to do through the negligence of the defendants Leitzen. For the injury thus sustained, he demands judgment for the recovery of damages from all the defendants.

The defendants admit the keeping of a garage by the Leitzens, that they let a Ford automobile to Kraft and knew that he intended to use it in taking his family to the carnival at Ute. They admit also that plaintiff was injured by a wire which was accidentally struck by said car while being operated by Kraft, but they each and all deny any negligence on their part with respect to the use of said car or to the injury suffered by plaintiff.

The evidence, so far as material to the appeal, tends to show that Kraft was accustomed to operate automobiles but had no previous experience with a Ford car. At the time he hired this car, one of the defendants got into the car with Kraft and backed the car out of the garage and gave him some instruction or direction as to its use. Kraft then drove the car to the vicinity of another garage or shop, where he was further instructed as to the manner of operating a Ford. He then drove to Ute and, while there operating it in a manner

which a jury might properly find to have been negligent, caused the injury to plaintiff.

Plaintiff having made this showing and rested his case, the court sustained the motion of the defendants Leitzen for a directed verdict in their favor. The plaintiff appeals.

I. In argument for appellant, counsel contends that one who lets an automobile for hire is responsible for the proper skill and care of the person to whom he entrusts it. In support of this position, we are cited to certain English cases where the owner of a cab is held liable for injuries resulting from the negligence of the driver. But such cases are parallel neither in fact nor in principle with the one now before us. The proprietor of a cab or hack stand lets his carriages supplied with drivers of his own selection and in his own employment. While to a certain extent the driver under such circumstances becomes the servant of the hirer, he does not cease to be the servant and representative of the cab owner, so far as the immediate care and management of the carriage and its motive power are concerned; and if, by his careless or reckless driving, a collision occurs upon the street and a third person is thereby injured without fault on his own part, the owner is very reasonably and properly held to respond in damages. But the owner of a livery stable or garage, making a business of letting teams or carriages or motor cars to customers who propose and expect to do their own driving, has never been held to any such rule of responsibility by any court so far as the precedents have been called to our attention, and we think there is no general rule or principle necessitating such conclusion. Cases may be imagined, perhaps, where an owner recklessly lets his spirited team or his automobile to an immature child or to a person who is intoxicated or otherwise manifestly incompetent to manage or control it, with the natural result of a collision upon the public street and consequent injury to others. It may well be that under such circumstances the owner would be held liable in damages, not

1. AUTOMOBILES: bailment: liability of bailor: negligence of bailee.

because the hirer is his servant or because as owner he is required to vouch to the public for the competency of all persons to whom he may let his teams or his cars for hire, but because he knew the incompetency of this particular driver and the imminent peril to which he thereby exposed others who were in the lawful use of the streets, and as a person of ordinary prudence should have refrained from so doing. Nothing of this manifest want of prudence is shown in this case now under consideration. Kraft, the hirer, is shown to have been a man accustomed to the use of automobiles. True, he had not before used a Ford car, but he had operated several others, and with the explanation and instruction which it is conceded he received concerning the manner of handling this car, we are disposed to hold that defendants cannot be charged with any failure of duty to the plaintiff or to the public in permitting him to drive it. To say otherwise and hold with plaintiff's contention would be to extend the law of liability for negligence to an unprecedented degree and to place a ruinous burden upon the business of letting vehicles for hire.

Our attention is also called to the case of *Tuller v. Talbot*, 23 Ill. 357, where the driver of a stage coach placed the reins in the hands of a passenger by whose negligence another passenger in the coach was injured, and the owner was held to respond in damages. This and other similar cases cited are to be classed with the English precedents above referred to and are not here in point. The owner of the stage line was a common carrier of passengers. The passenger who was injured had no control over the driver. The owner was in duty bound to protect the passenger against the negligence of the servant, and the act of the servant in passing the reins to a third person was in legal effect the act of the owner, who thereby became responsible for the negligence of the substituted driver. The defendants in this case were not carriers. They let their vehicles for hire, assuming no responsibility for negligence or recklessness of the hirer, save, perhaps, under exceptional circumstances such as we have already

adverted to. In the absence of evident unfitness of a customer applying for a vehicle, we see no reason why the owner should be held to make an investigation into his qualifications as a driver.

II. It is next said that an automobile is of such character that, while perhaps not *per se* a dangerous instrument, it may easily become such, and the owner is therefore bound to the exercise of greater care than would be required were there less danger in its operation. There is more or less danger in the use of vehicles of any kind. The motorcycle, the bicycle, the stage coach, the ordinary carriage drawn by horses, all have their possibilities of peril and there is room for difference of opinion concerning the various degrees of danger to be apprehended therefrom. The great body of those who use the various instrumentalities of travel are persons of ordinary prudence, while the incompetent or negligent is the exception. The fact that here and there a driver carelessly or recklessly converts his vehicle into an engine of injury or destruction to others is not a sufficient reason for requiring the owner of such vehicles for hire to test and ascertain the competency and skill of every customer before entrusting him with the custody of a car.

Nor is there any likeness, as counsel seems to think, between this case and that of the livery stable keeper who wilfully lets for hire an animal he knows to be vicious or dangerous. If the car in this case was defective in some respect which rendered it incapable of control or made it a source of special danger, and defendants had allowed it to go out in that condition and thereby plaintiff had been injured, a very different question would be presented. But so far as shown, the car was in perfect condition, and the sole cause of plaintiff's injury was the carelessness or forgetfulness of Kraft, who, in an emergency, threw a lever the wrong way, thereby causing a sudden acceleration of speed instead of checking it, as he intended. Had he been driving a hired team and in some way had heedlessly got the reins crossed in his hands,

thereby running over and injuring the plaintiff, counsel would hardly advise his client that the owner of the outfit was liable in damages for the hirer's negligence. The fact that the vehicle in this case happens to have been an auto car instead of a horse and buggy or a coach and four calls for the application of no different rule.

The testimony in the case discloses no cause of action against the appellees and the judgment below is therefore—
*Affirmed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.